UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Aimee Hanson,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Collectcorp Corporation,<br><br>　　　　　Defendant. | Court File No.: _____<br><br>**Complaint**<br><br>**Jury Trial Demanded** |

## PARTIES

1.　Aimee Hanson is a natural person who lives in St. Paul, Minnesota and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

2.　Collectcorp Corporation is a debt collection agency incorporated in the state of Delaware with a Minnesota registered office address of 100 S. 5th Street, Ste. 1075, Minneapolis, MN 55402. Collectcorp regularly collects consumer debts and is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6)

## JURISDICTION

3.　Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

1

4. Venue is proper in this District because the acts and transactions occurred here, Hanson lives here, and Collectcorp conducts business here.

## FACTUAL ALLEGATIONS

*Background*

5. Hanson obtained an American Express account and used it to make purchases that were primarily for personal, family or household purposes. The American Express account is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

6. Sometime in 2010, Hanson's American Express account was placed with Collectcorp for collection.

7. In 2010, Hanson made a monthly payment arrangement with Collectcorp to pay off the balance of her American Express account.

8. As part of her payment arrangement, Hanson authorized Collectcorp to take payments automatically from her checking account.

9. At Collectcorp's request, Hanson gave her authorization for the automatic withdrawals for only three months at a time. At the end of each three month period, Hanson would give permission for an additional three months of automatic withdrawals. This three month cycle repeated several times and Hanson spoke with Collectcorp's representatives on a number of occasions.

10.     Hanson's last regular payment to Collectcorp was on or about March 23, 2011. This payment was the end of the most recent three month cycle of automatic payments.

11.     On or about March 24, 2011 and March 25, 2011, Collectcorp called Hanson to make arrangements for the next three month cycle of automatic withdrawals.

12.     Hanson briefly spoke to Collectcorp's representative on or about March 25, 2011. Hanson explained that she was currently with a client and would call the representative back later.

13.     On or about March 28, 2011, Collectcorp called Hanson again and left a voice message. Hanson did not immediately return the call because she was busy with work. Knowing that the next monthly payment was not due until April 23, 2011, Hanson intended to call Collectcorp back in the next few days to authorize the next three months of payments.

*Collectcorp's calls to Hanson's mother-in-law*

14.     On or about March 28, 2011, Collectcorp called Hanson's mother-in-law. Hanson's mother in law is 80 years old and her husband recently passed away.

15.     Although they are technically still married, Hanson is separated from her husband and rarely speaks to her mother-in-law. As such, Hanson did not authorize Collectcorp to contact her mother-in-law.

16.  During the conversation, the Collectcorp representative asked for Hanson. Hanson's mother-in-law explained that Hanson did not live there.

17.  The Collectcorp representative then asked if Hanson's mother-in-law knew how to reach Hanson. Hanson's mother-in-law gave the Collectcorp representative Hanson's phone number, which Collectcorp already knew through their previous conversations with Hanson.

18.  During the conversation, the Collectcorp representative was pushy and rude to Hanson's mother-in-law.

19.  On or about March 29, 2011 Collectcorp called Hanson's mother-in-law again. During their previous conversation, Hanson's mother-in-law did not request that Collectcorp call her again.

20.  During the March 29, 2011 conversation, CollectCorp again asked if Hanson lived there. Hanson's mother-in-law again explained that she did not and that she had never lived at that address.

21.  The Collectcorp representative then asked Hanson's mother-in-law to confirm Hanson's cell phone number, which Hanson's mother-in-law had given to Collectcorp the day before. She confirmed that the phone number was correct.

*Collectcorp's calls to Hanson's husband*

22.     On March 28 or 29, 2011, Collectcorp called Hanson's husband. As noted above, Hanson is technically still married to her husband, but they have been separated for nearly 10 years.

23.     Collectcorp left a message for Hanson's husband and disclosed that they were calling on behalf of American Express. Hanson's husband is not a co-account holder on her American Express account and, until Collectcorp's call, had no knowledge of the account.

24.     On March 29, 2011, Collectcorp called Hanson's husband again. At the time, Hanson's husband was having dinner with friends. Collectcorp's representative explained that he was looking for Hanson and asked Hanson's husband to verify her phone number.

25.     During the conversation, Collectcorp explained that they were calling about Hanson's American Express account. Hanson's husband told them that he did not know anything about the account and that they should contact Hanson herself. He then told Collectcorp's representative never to call him again.

26.     On March 31, 2011, Collectcorp called Hanson's husband again, despite his previous request not to be contacted again. Collectcorp's representative again asked Hanson's husband to confirm Hanson's contact information. During the conversation, Collectcorp again disclosed that they were calling on behalf of American Express, that Hanson owed $26,000, and that she hasn't paid.

27.     Hanson's husband immediately terminated the call and called Hanson to find out what was going on.

*Hanson's subsequent communications with Collectcorp*

28.     After learning that Collectcorp had communicated with her estranged husband and mother-in-law, Hanson called Collectcorp.

29.     She initially spoke to a Collectcorp representative and expressed her concern that her relatives were being called and that her personal financial information had been divulged. The representative acknowledged that he had talked to both of Hanson's relatives.

30.     Hanson then asked to speak to a supervisor. When Hanson spoke to a manager and expressed her concerns about Collectcorp's representatives' communications with her relatives, the manager represented that he was not aware Hanson's relatives had been called.

31.     At the end of the conversation, Hanson told Collectcorp never to call her, her estranged husband, or her mother-in-law again.

**Summary**

32.     By contacting Hanson's mother-in-law without Hanson's permission after they already knew how to contact Hanson, Collectcorp violated 15 U.S.C. §§ 1692c, 1692c(b), and 1692d.

33.     By contacting Hanson's mother-in-law a second time even though Hanson's mother-in-law did not request them to do so, Collectcorp violated 15 U.S.C. §§ 1692b and 1692b(3).

34.     By contacting Hanson's husband multiple times when they already knew how to contact Hanson and when Hanson's husband was not a joint-account holder, Collectcorp violated 15 U.S.C. §§ 1692d.

## Respondeat Superior Liability

35.     The acts and omissions of Collectcorp's collectors were committed within the time and space limits of their agency relationship with Collectcorp.

36.     The acts and omissions by Collectcorp's collectors were incidental to, or of the same general nature as, the responsibilities the collectors were authorized to perform by Collectcorp.

37.     By committing these acts and omissions, Collectcorp's collectors were motivated to benefit Collectcorp.

38.     Therefore, Collectcorp is liable to Hanson through the doctrine of respondeat superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its collector, including, but not limited to, violations of the FDCPA.

## TRIAL BY JURY

39. Hanson requests a trial by jury on all issues so triable. U.S. Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### Count I

*Violations of the Fair Debt Collection Practices Act*

40. Hanson repeats the preceding allegations.

41. Collectcorp's attempts to collect a debt from Hanson resulted in several violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq., including, but not necessarily limited to, those summarized above.

42. As a result of Collectcorp's violations of the FDCPA, Hanson is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## PRAYER FOR RELIEF

Hanson requests judgment against Collectcorp:

1. For an award of actual damages under to 15 U.S.C. § 1692k(a)(1);

2. For an award of statutory damages of $1,000.00 under to 15 U.S.C. §1692k(a)(2)(A);

3. For an award of costs of litigation and reasonable attorney's fees under to 15 U.S.C. § 1692k(a)(3);

                                                          **THE TODD MURRAY LAW FIRM**

Date: May 19, 2011

                                                      *s/ Todd Murray*

Todd Murray (#347462)
Attorney for Plaintiff
800 Washington Ave N, Ste. 704
Minneapolis, MN 55401
todd@toddmurraylaw.com
(612) 284-4141 (phone)
(612) 605-1933 (fax)

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA       )
                         ) ss
COUNTY OF HENNEPIN       )

    Aimee Hanson, being sworn, states that:

1. I am the Plaintiff in this case.

2. I have read this Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge.

3. I believe that this Complaint is well-grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this Complaint is not being brought for any improper purpose, such as to harass the Defendant, cause unnecessary delay, or create a needless increase in the cost of litigation to the Defendant.

5. I have filed this Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit I have provided to my attorney that has been attached to this Complaint is a true and correct copy of the original.

7.   Except for clearly indicated redactions made by my attorney where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Date: May 19, 2011                              *s/ Aimee Hanson*
                                                Aimee Hanson

Subscribed and sworn to before me
this 19th day of May, 2011

*s/ Todd Murray*
Notary Public